Mitchell Posin, Esq.
Law Offices of Mitchell Posin, Chtd.
1645 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel. (702) 382-2222/Fax (702) 382-7496
mposin@gmail.com
Attorney for Plaintiff and proposed attorney for Class of Injured Property Owners

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

MICHAEL HARKEY,
    Plaintiff and Proposed Lead Class
    Plaintiff for All Nevada Property
    Owners Similarly Situated,
    who were deprived of their
    right to petition the judiciary
    for redress of grievances by
    the use of fraudulent recorded
    documents by the MERS®-LPS
    ENTERPRISE described herein,

vs.

US BANK, N.A., AS TRUSTEE FOR
THE CSMC MORTGAGE-BACKED
TRUST 2007-6; et al.
    Defendants.

Case No.  2:14-cv-00177-RFB-GWF

SECOND AMENDED (revised language at page 15, lines 10-16)
CONSOLIDATED RESPONSE TO MOTIONS TO DISMISS (DOCS. 217, 218 AND 219) OF
CERTAIN DEFENDANTS PREMATURELY RAISING THE AFFIRMATIVE DEFENSE OF
STATUTE OF LIMITATIONS[1] AND, AS TO LPS EMPLOYEES ALLEN AND MOUA,
SUGGESTING LACK OF PERSONAL JURISDICTION OVER THEIR
"CLERICAL" ACTIONS

**NOW COMES** Michael Harkey, by his attorney, Mitchell Posin of the Law Office of

Mitchell Posin, Chtd. and respectfully responds to the initial Motions to Dismiss (Docs. 217, 218

and 219) filed by Fidelity National Financial, Inc. (FNF), Black Knight Financial, LLC (BKF),

two (2) employees of FNF subsidiaries (Christina Allen, n/k/a Christina Schwarting and Shoua

Moua) and Earl and Eve Beutler (the Beutlers), whose family trust, the Earl Beutler and Eve

---

[1]  A slightly different analysis would apply to the MERS® aspect of the MERS®
-LPS Racketeering Enterprise, and this response applies exclusively to the Movants named herein.

1

Beutler Family Trust,  purports to hold an interest in the real estate located at 2220 Village Walk Drive, Unit 3315, Henderson, Nevada 89052 (hereinafter the "subject property") (collectively, the Movants) and shows the Court:

1.   This Court has ordered Plaintiff to respond to the Movants' initial effort to have Plaintiff's claims dismissed because they assert that the statutes of limitations bars his claims.

2.   As a preliminary matter, Plaintiff notes the Movants' unusual attempt to join in a future filing by other Defendants in this action, which is, of course, entirely speculative because no such Motion or Motions have yet been filed.  Movants could not possibly know whether or not such yet-to-be filed Motion or Motions would pertain to the Plaintiff's claims against the Movants.  What the speculative future joinder suggests is that Movants will join with their alleged state and federal RICO co-conspirators in whatever defenses their co-conspirators will interpose as a matter of law to Plaintiff's claims, without regard to the merits of those defenses, which Movants could not possibly have evaluated as required by Fed. R. Civ. P. 11. There is obviously no need for the Plaintiff to address such speculative "defenses," which Movants purport to have prospectively reserved.

3.  It must be noted further that Fed. R. Civ. P. 12(g) does not permit multiple motions under Fed. R. Civ. P. 12.   All grounds for relief arising under Fed. R. Civ. P. 12 which a party seeks to assert must be raised at the same time, except as provided in Rule 12(h)(2) or (3). neither of which apply to the "reserved" intention to join in anticipated motions to be filed by other defendants under Fed. R. Civ. P. 12(b).

4.  Fed. R. Civ. P. 12(g) provides:

(g) Joining Motions.

(1) Right to Join. A motion under this rule may be joined with any other motion allowed by this rule.

(2) Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

5.   The Movants launch an initial defense against Plaintiff's claims on the basis that his claims are barred by the applicable Nevada statutes of limitations and, apparently, the statute of limitations governing the private civil right of action under the federal Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1964.

*The Defense of Statutes of Limitation Generally*

6.   Defenses that the statutes of limitations bars one or more of Plaintiffs's claims are not among the grounds for motions enumerated under Fed. R. Civ. P. 12 and is not among the grounds for a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  The Movants' defense that Plaintiff's claims are barred by applicable statutes of limitations is an affirmative defense specified under Fed. R. Civ. P. 8(c)(1).

7.   Fed. R. Civ. P. 8(c)(1) provides:

(c) Affirmative Defenses.

(1) In General. **In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:**

• accord and satisfaction;
• arbitration and award;
• assumption of risk;
• contributory negligence;
• duress;
• estoppel;
• failure of consideration;
• fraud;
• illegality;
• injury by fellow servant;
• laches;
• license;
• payment;
• release;
• res judicata;
• statute of frauds;
• **statute of limitations**; and
• waiver.          (Bold emphasis added.)

8.   Fed. R. Civ. P. 8 is designated the General Rules for Pleadings.  Pleadings are specifically defined at Fed. R. Civ. P. 7(a), which provides:

3

(a) Pleadings. Only these pleadings are allowed:

(1) a complaint;
(2) an answer to a complaint;
(3) an answer to a counterclaim designated as a counterclaim;
(4) an answer to a crossclaim;
(5) a third-party complaint;
(6) an answer to a third-party complaint; and
(7) if the court orders one, a reply to an answer.

9.  To interpose their statute of limitations defense as an affirmative defense, Movants, who are defendants in this action, are required to file an answer under Fed. R. Civ. P. 7(a), which they have not done, so their statute of limitations affirmative defense is premature.  The Federal Rules of Civil Procedure do not provide for a Motion to Dismiss as a means of raising an affirmative defense.  (Plaintiff has been instructed by the Court not to move to strike impertinent and immaterial motions under Fed. R. Civ. P. 12(f), but to respond to such filings.  Had the Court not so instructed, Plaintiff would have moved to strike the Movants' attempt to obtain relief on an affirmative defense because their motions are not permitted to be raised outside of a pleading specified in Fed. R. Civ. P. 8(c)(1) and are, therefore, believed to be impertinent.)

10 .  Because Plaintiff has been ordered to respond to the Movants' motions raising the affirmative defense that the statute of limitations bars his claims, which claims Movants do not identify on an claim by claim basis, but Plaintiff does so in this Response.

11.  Plaintiff reserves his right to oppose any future joinder by these Movants in the motions to be filed in the future by other defendants because these Movants have now exhausted their attempt to obtain dismissal of Plaintiff's claims by motion, even though they are not entitled to relief by motions on the affirmative defense that the statute of limitations bar any of Plaintiff's claims.  Plaintiff is entitled to the protections of  Fed. R. Civ. P. 12(g) so that he does not have to engage in serial responses to motions under Fed. R. Civ. P. 12 filed by these Movants, if they seek to have Plaintiff provide any further response to their motions under Fed. R. Civ. P. 12, exclusive of those brought under Fed. R. Civ. P. 12(h)(2) or (3), by "joinder" in future motions under Fed. R. Civ. P. 12 anticipated to be filed by other defendants.

1      12.  Fed. R. Civ. P. 12(g) requires that Fed. R. Civ. P. 12 movants inform themselves of

2    all Fed. R. Civ. P. 12 motions that may be brought, subject to the exceptions allowed at Fed. R.

3    Civ. P. 12(h)(2) or (3), which do not apply to the pending Motion.  Movants could have availed

4    themselves of the stay provided by this Court, but chose not to do so, perhaps believing that there

5    was a strategic advantage to proceed at this time due to the pendency of Plaintiff's counsel's

6    withdrawal due to a concurrent conflict of interest and hoping to confront Plaintiff on the

7    complex procedural and substantive issues they prematurely raise by Motion to Dismiss,  when

8    Plaintiff may be without the benefit of counsel.  That strategy fails entirely because counsel for

9    Plaintiff has not yet been granted leave to withdraw and is duty-bound to continue as Plaintiff's

10    counsel until leave to withdraw is granted Rule 1.16 (c) of the Nevada Rules of Professional

11    Conduct.  Leave to withdraw is pending and has not been granted.  Counsel for the Plaintiff has

12    been ordered to serve his Notice of Leave to Withdraw on the Plaintiff by March 16, 2015.

13    *Specific Application of the Nevada Statutes of Limitations as to the Corporate Defendants, FNF*
     *and BKF*
14

15      13.  Despite the Movants' premature attempt to interpose the affirmative defense that the

16    applicable statutes of limitations bars Plaintiff's claims, the corporate defendants, FNF and BKF,

17    are specifically denied the right to interpose the defense that Plaintiff's claims against them are

18    barred by the Nevada statutes of limitations as to pendent state claims under NRS 80.90 and NRS

19    80.095, which provide:

20          **NRS 80.090  Statute of limitations.**  If a foreign corporation doing business in this State
          maintains and keeps in the State a registered agent as provided by NRS 80.060 and files
21          or has microfilmed the papers, records and instruments required by NRS 80.010 to
          80.040, inclusive, the foreign corporation is entitled to the benefit of the laws of this State
22          limiting the time for the commencement of civil actions.
            [Part 1:165:1907; A 1921, 88; 1933, 24; 1931 NCL § 1848]—(NRS A 1965, 601;       2001, 1382,
23          3199; 2003, 3116; 2007, 2654)

24          **NRS 80.095  Suspension of statute of limitations for failure to comply.**  The benefit of
          NRS 80.090 shall be suspended during any period or periods when the corporation is in
25          default in complying with the requirements of NRS 80.090; and no such corporation can
          maintain any action or proceeding in any court of this State while so in default.
26            [Part 1:165: 1907; A 1921, 88; 1933, 24; 1931 NCL § 1848]—(Substituted in revision for NRS 80.220)

27

28                                                      5

14. Exhibits A, B and C attached hereto plainly shows that Fidelity National Financial, Inc. and Black Knight Financial, LLC, formerly known as Lender Processing Services, Inc. do not have and have not had a registered agent in the State of Nevada at any time.  Therefore, FNF and BKF are not entitled to raise the defense of statute of limitations as to any pendent claim arising under the laws of the State of Nevada, which are all Counts in the Second Amended Complaint, except Count 2, which pleads the federal, civil cause of action for recovery under 18 U.S.C. sec. 1964 (federal RICO.)

15. The application of the federal RICO statute of limitations as to the Movants FNF and BKF,  who are corporate entities and who did not have registered agents for service of process, will be addressed.

*Alternative Application of the Nevada Statutes of Limitations as to Specific Movants*

16. Without waiving the protection afforded to Nevada citizens by NRS 80.90 and NRS 80.095, which preclude the statute of limitations argument of corporate defendants and reserving his position,  pursuant to Fed. R. Civ. P. 12(g), that the Movants' Motions to Dismiss to which he will respond that joinder in such future motions to dismiss (which Movants anticipate will be filed by other defendants) is precluded, all statutes of limitation applicable to Plaintiff's theories of recovery against the Movants, as a matter of **fact and law** are addressed herein, as to federal RICO violations (Count 2), the pendent state claims relief under Nevada RICO (Count 1), for relief under NRS 205.395 (Count 3), for common law fraud (Count 4) and the alternative claim for negligent misrepresentation (Count 4), unjust enrichment (Count 7) and quiet title (Count 8.)

17. The statute of limitation for the pendent state claim for equitable recission (Count 6) will not be addressed herein because it is asserted against a yet-unidentified entity and implicates no rights or interests of any of the Movants.  The discussion of the statute of limitations applicable to Counts 7 and 8 will address the statute of limitations as to the Beutlers, who are the only Movants to whom Counts 7 and 8 apply.  Counts 1 and 2 do not apply to the Beutlers and the Movants (Allen and Moua), who are natural persons entitled to the protection of the Nevada

6

statutes of limitation as to Counts 1, 2, 3, 4, and 5, when the affirmative defense is properly pleaded under Fed. R. Civ. P. 8, are sued solely in their employment capacity.   Plaintiff sets forth, the applicable statutes of limitation below and will indicate, *infra*, as to each claim, how the statutes of limitation should be applied:

*Count 2 (Federal RICO)*

a. The federal, civil RICO claim for damages arising from injury to property under 18 U.S.C. sec. 1964 is subject to the statute of limitations imposed by the United States Supreme Court in *Agency Holding Corp., v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987).   In that case, the United States Supreme Court established the federal, civil RICO statute of limitation as being four (4) years from the date the injury accrues, by analogy to the four (4) year statute of limitations for Clayton Act violations established by Congress.   The accrual of Plaintiff's injury to his property was no earlier than March 18, 2010, when the RICO co-conspirators deployed Safeguard Properties, LLC (Safeguard) to remove Plaintiff's belongings from the subject real estate, forcibly terminating his seisen.  All acts complained of in the Second Amended Complaint led to the injury which accrued on that date (or within the next few days thereafter, the exact date being exclusively in the control of certain of the defendants) and were necessary to effectuate the injury to Plaintiff's property.  For equitable tolling which is not necessary in this timely-filed case, see *Rotella v. Wood*,  528 U.S. 549 (2000).

*Count 1 (Nevada State RICO) 5 years*

b. The state, civil RICO claim for damages arising under NRS 207.470 (which cannot apply to the corporate defendants, FNF and BKF, which are not foreign corporations who have registered agents for service of process in the State of Nevada) is five (5) years pursuant to NRS 207.520.   By its terms, Count 1 does not apply to the Beutlers and applies only to Movants Allen and Moua in their employment capacity.   By the terms of NRS 80.90 and the facts alleged and provided by judicial notice requested of Exhibits A, B, and C attached hereto, Movant FNF and BKF are not entitled to the benefit of NRS 207.520.  This action was commenced within five (5) years of the forcible termination of Plaintiff's seisen in the subject property in which the false

7

documents executed by LPS employees, including Movants Allen and Moua, concealing their

identities and claiming to be authorized by U.S. Bank as Trustee of a nonexistent entity.

*Count 3 [Relief pursuant to NRS 205.395(5)] 3 years*

    c. By its terms, the time for pleading a cause of action pursuant to NRS 205.395(5) does

not begin to run until 20 days after notice demanding correction is given.

    (1)  NRS 205.395(5) is a statutorily-created cause of action, which provides:

> 5. Except as otherwise provided in this subsection, the owner or holder of the beneficial interest in real property which is the subject of a false representation concerning title may bring a civil action in the district court in and for the county in which the real property is located to recover any damages suffered by the owner or holder of the beneficial interest plus reasonable attorney s fees and costs. The owner or holder of the beneficial interest in the real property must, before bringing a civil action pursuant to this subsection, send a written request to the person who made the false representation to record a document which corrects the false representation. If the person records such a document not later than 20 days after the date of the written request, the owner or holder of the beneficial interest may not bring a civil action pursuant to this subsection.

    (2)   The time for filing the action for damages, is governed by NRS 11.190(3)(a), which

provides:

> Periods of limitation. Except as otherwise provided in NRS 125B.050 and 217.007,[2] actions other than those for the recovery of real property, unless further limited by specific statute, may only be commenced as follows:
> . . .
> (3) Within 3 years:
> (a) An action upon a liability created by statute, other than a penalty or forfeiture.

    (3) At the motion to dismiss phase of these proceedings, no factual determination may be

made as to if and when Plaintiff made his demand upon LPS to determine that the three (3) years

statute of limitations began to run, but the reasonable inference, to which Plaintiff is entitled at

this stage of these proceedings, would have to be that Plaintiff could not have done so before he

knew that Joseph Noel was employed by LPS or an affiliated entity, which was no earlier than

December 5, 2011, as pleaded in the Second Amended Complaint at paragraph 410.

*Count 4 (Common Law Fraud) 3 years from the date of discovery*

    d. Again, the date upon which Plaintiff first discovered that Joseph Noel was employed

---

[2] Neither of which apply.

by LPS and may have falsely notarized the signature on the Notice of Default was December 5, 2011.  The common law fraud claim is governed by NRS 11.190(3)(d), which  provides:

> Periods of limitation. Except as otherwise provided in NRS 125B.050 and 217.007,[3] actions other than those for the recovery of real property, unless further limited by specific statute, may only be commenced as follows:
>
> . . .
>
> (3) Within 3 years:
>
> . . .
>
> (d) Except as otherwise provided in NRS 112.230 and 166.170, an action for relief on the ground of fraud or mistake, but the cause of action in such a case shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud or mistake.

*Count 5 (Negligent Misrepresentation) 3 years from the date of discovery*

e.  The common law cause of action for negligent misrepresentation sounds in fraud and is, therefore, subject to the provisions of NRS 11.190(3)(d) and the three (3) year statute of limitations begins to run from the date upon which the fraud was discovered.  The date of discovery of the fraud is a question of fact, but, because the Second Amended Complaint must be taken as true, the first discovery of fraud in the recorded documents upon which Plaintiff relied was December 5, 2011 and Count 5 is timely pleaded.

*Count 6 (Recission) 6 years, tolled by fraudulent concealment which adds 3 years from the date of discovery of the identity of the real party in interest*

f.  Equitable recission is not pleaded against any party identified in this action, and, as a matter of fact, Plaintiff will show that the identity of the party entitled to enforce the contract which he now knows he was fraudulently induced to sign has been concealed by the MERS®-LPS Racketeering Enterprise.  Equitable recission is a remedy under the theory of contract law and the statute of limitations under Nevada law is six (6) years under NRS 11.190(1)(b) and is equitably tolled by the concealment of the unidentified party's identity.  NRS 11.190(1)(b) provides:

> NRS 11.190(1)(b) Periods of limitation. Except as otherwise provided in NRS 125B.050 and 217.007, actions other than those for the recovery of real property, unless further limited by specific statute, may only be commenced as follows:

---

[3] Neither of which apply.

1. Within 6 years:
. . .
(b) An action upon a contract, obligation or liability founded upon an instrument in writing, except those mentioned in the preceding sections of this chapter.

*Count 7 (Unjust Enrichment) 4 years*

g.  The statute of limitation for an unjust enrichment is a cause of action is four (4) years under NRS 11.190(2)( c).  *In Re: Amerco Derivative Litigation*, 252 P.3d 681 (Nev. 2011). Count 7 applies, among the Movants, only to the Beutlers, who are believed to be personally enriched by the use of Plaintiff's property, based on the inferior title taken in the name of the Earl Beutler and Eve Beutler Family Trust and their son, Bryce D. Beutler.  Family Trusts are generally pass-through entities for tax purposes and they may be receiving financial benefits. Family Trusts are also generally revocable and it is believed that Earl and Eve Beutler used their own funds to acquire the inferior title to the subject property and caused it to be conveyed to their estate plan (the Family Trust) and their direct lineal heir.  Discovery had not yet been undertaken and the Beutlers' liability cannot be determined as a matter of law either for or against Plaintiff's right of recovery.  Nevertheless, Count 7 was timely filed and is not barred by the Nevada statute of limitations because the Beutlers are alleged to have been unjustly enriched by their inferior claim to title since no earlier than October 26, 2010.  The Amended Complaint put the Beutlers on notice of Plaintiff's disputes in July, 2014.

*Count 8 (Quiet Title) 5 years*

h.  Plaintiff's quiet title claim is not governed by NRS 107.080, which limits actions by mortgagees whose rights are lawfully terminated by substantial compliance with the nonjudicial foreclosure statute.  Count 8 pleads a cause of action for quiet title under Nevada law and applies only to the Earl Beutler and Eve Beutler Family Trust and Bryce D. Beutler, neither of whom have been served with the Second Amended Complaint. The Family Trust and Bryce D. Beutler have not appeared in this action and are not Movants herein. The Beutlers do not have standing to seek dismissal of Count 8 because they do not claim the inferior title at this time. Nevertheless, NRS 40.010 establishes the cause of action and NRS 11.080 provides the statute of

limitations, which is five (5) years and provides:

> NRS 11.080  Seisin within 5 years; when necessary in action for real property.  No action for the recovery of real property, or for the recovery of the possession thereof other than mining claims, shall be maintained, unless it appears that the plaintiff or the plaintiff's ancestor, predecessor or grantor was seized or possessed of the premises in question, within 5 years before the commencement thereof.

*Nevada RICO (Count 1)*

18.  Movants completely fail to address the statute of limitations for the state cause of action for multiple, specified violations of NRS 205.377, which are predicate acts under 207.470 (Nevada RICO).  The statute of limitations for Nevada RICO is five (5) years under NRS 207.520, which provides:

> NRS 207.520  Limitation of actions.  A criminal action or proceeding under NRS 205.322 or 207.400 may be commenced at any time within 5 years after the conduct in violation of the section occurs. Except as otherwise provided in NRS 217.007, a civil action or proceeding under NRS 207.470 may be commenced at any time within 5 years after the violation occurs or after the injured person sustains the injury, whichever is later. If a criminal prosecution or civil action or other proceeding is brought to punish, prevent or restrain any violation of the provisions of NRS 205.322 or 207.400, the running of the period of limitations prescribed by this section with respect to any cause of action arising under NRS 207.470, which is based in whole or in part upon any matter complained of in the prosecution or proceeding, is suspended during the pendency of the prosecution or proceeding and for 2 years following termination of the prosecution or proceeding. [Added to NRS by 1983, 1501; A 1985, 1828; 1993, 454]

Moreover, the predicate acts are continuing, based on the false documents described in the Amended and Second Amended Complaint, which remain of record.

19.  Disregarding, but not waiving, the continuing nature of the violations of NRS 205.377, the earliest date upon which the last overt violation of NRS 205.377 occurred no earlier than the termination of Plaintiff's seisen (possession under superior title as alleged) and no later than the sale of the subject property by SPS, as servicer for U.S. Bank, as Trustee for the nonexistent entity named "the holders of the CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6," upon a title insurance policy issued by FNF subsidiary First National Title Insurance (FNTI) through LSI Title Agency, Inc. (LSI), to the Defendant Beutlers in the name of their Family Trust in October, 2010.

*Federal RICO (Count 2)*

20.  The statute of limitations for federal civil RICO claims was set by the United States Supreme Court as being four (4) years after the accrual of Plaintiff's injury.  *Agency Holding Corp., v. Malley-Duff & Associates, Inc*., supra. Equitable tolling might additionally apply, depending on the case and if it were necessary, but it is not necessary in this case. See *Rotella v. Wood,*  528 U.S. 549 (2000). Plaintiff has specifically pleaded that the injury to his property interest occurred when he was excluded from occupancy and his seisen in the subject property was terminated by the removal ("trash out") of his personal property by Safeguard Properties, LLC (Safeguard.)  The termination of his seisen was the date of injury to his property interest. His injury occurred and his cause of action  accrued less than four (4) years prior to the commencement of this action and, therefore, Count 2 of the Amended Complaint filed on March 17, 2014 and Count 2 of the Second Amended Complaint filed on January 20, 2015 was filed within the statute of limitations for the private, federal, civil  RICO right of action arising from the injury to Plaintiff's property interest, which is the purpose for which the alleged MERS®-LPS Racketeering Enterprise is operated.

21.  Adam Fenn, the defaulted defendant, acting in furtherance of the conspiracy to remove Plaintiff from possession of the subject real estate, procured the services of co-conspirator Safeguard Properties, LLC, at the direction of (upon information and belief) Select Portfolio Serving, Inc. (SPS), as purported servicer for U.S. Bank as Trustee for (the nonexistent entity) "the holders of the CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6," no earlier than March 18, 2010.  The filing of the Amended Complaint is timely from the date upon which Plaintiff's seisen was physically terminated.

22.  Nevertheless, the final overt act in the conspiracy to deprive Plaintiff of his lawful title to the subject real estate occurred when the name of a nonexistent entity for which U.S. Bank pretended to be acting as Trustee (through SPS employees Patrick Pittman and Julie Metters) purported to transfer the title to the Beutlers' family trust (by Deed purportedly executed

by Pittman on October 26, 2010, notarized by Metters on October 4, 2010) to which Plaintiff's title is alleged to be superior.

23.   Moreover, the continuing exclusion of Plaintiff from his seisen by the conspirators based on the false documents filed in the public record is a continuing tort and the statute of limitation for federal, civil RICO has not yet commenced to run.

*Nevada Quiet Title (Count 8)*

24.   NRS 40.010 provides that quiet title actions must be commenced within five (5) years of the date seisen was terminated (no earlier than March 18, 2010) and therefore, the Amended and Second Amended Complaint were timely filed as to Count 8.

*A. Application of NRS 107.080*

*1. Lack of Standing*

*(a) FNF, BNK and employees Allen and Moua*

25.   Even if NRS 80.90 did not apply to FNF and BKF, FNF and BKF do not have standing to defend on the basis of NRS 107.080, for the reasons set forth above (there was no compliance with nonjudicial foreclosure proceedings under Nevada law) and because FNF, BKF, Allen and Moua have no interest in the subject property upon which to base their pretended defense under NRS 107.080.

*(b) Earl Beutler and Eve Beutler*

26.   Earl Beutler and Eve Beutler do not claim an interest in the subject real estate in their individual capacities, so they do not presently have standing to raise the application of NRS 107.080, which is inapplicable in any event (see above.)  Plaintiff reserves the thorough discussion he has prepared regarding the bona fide purchaser defense and the void title which was conveyed by SPS employees Pittman and Metters to a time at which parties with actual interests in the title seek to be heard on the QLSC conveyance to SPS (purported servicer for U.S. Bank as Trustee nonexistent entity identified as "the holders of the CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6 ") and the subsequent pretended conveyance to

the Beutlers' Family Trust and Bryce D. Beutler for a value far less than the market value of the subject property, with obvious notice of Plaintiff's claim to the subject property.

*B. NRS 107.080 is Inapplicable to the Pretended Actions Against Plaintiff's Property Interests*

27. NRS 107.080(5) provided, at the time of the pretended nonjudicial foreclosure proceedings, in relevant part:

> 5. Every sale made under the provisions of this section and other sections of this chapter vests in the purchaser the title of the grantor and any successors in interest without equity or right of redemption. A sale made pursuant to this section must be declared void by any court of competent jurisdiction in the county where the sale took place if:
> (a) **The trustee or other person authorized to make the sale does not substantially comply with the provisions of this section** . . .(Emphasis added.)
> (b) Except as otherwise provided in subsection 6, an action is commenced in the county where the sale took place within 90 days after the date of the sale; . . .

28. By its specific terms, NRS 107.080(5) does not apply because Quality Loan Service Corporation (QLSC) was never lawfully substituted as Trustee, so NRS 107.080 does not apply.

29. Only a foreclosure sale performed by a lawfully appointed Trustee can trigger the application of NRS 107.080(5) by its specific terms.

30. There has been no foreclosure sale as a matter of law because QLSC was never lawfully appointed Trustee of Plaintiff's Deed of Trust, now admitted to have been signed and notarized by LPS employees Allen and Moua in "clerical" capacities; Plaintiff was never given Notice of Acceleration under paragraph 22 of his Deed of Trust;  Plaintiff never received a lawfully executed Notice of Default; and U.S. Bank as Trustee for the holders of the CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6 was never assigned Plaintiff's Deed of Trust by the Corporate Assignment of Deed of Trust.

31. NRS 107.080 requires that any purported foreclosure sale be performed upon lawful notices and with lawful authority.

32. NRS 107.080 does not apply to the pretended foreclosure of Plaintiff's interests in the subject property.

*Discovery of the Frauds, Fraudulent Concealment, Alternative Negligent Misrepresentations and Timeliness*

33. Plaintiff was deceived by the false documents filed in the public record of the Clark County Recorder.  The exact purpose of the creation and public recording of the false documents was to pretend that QLSC had been substituted as the Trustee, by the original beneficiary, New Century Mortgage Corporation (NCMC) on July 28, 2008 by its terminated nominee "Mortgage Electronic Registration Systems, Inc."  Plaintiff's Second Amended Complaint specifically alleges and provides irrefutable documentation from the NCMC Chapter 11 case in the Delaware Bankruptcy Court, Case No. 07-10416, that as of March 19, 2008, NCMC had terminated any agency purportedly granted to Mortgage Electronic Registration Systems, Inc. (MERS III). Specific allegations and documents attached to the Second Amended Complaint and judicial admissions in these proceedings conclusively demonstrate that Bill Koch, an admitted employee of Select Portfolio Serving, Inc. (SPS) pretended to assign the Corporate Deed of Trust to "U.S. Bank as Trustee holders of the CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6" as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. (MERS III) almost four (4) months *after* NCMChad rejected its membership contract with MERSCORP Holdings, Inc. (MERSCORP), which allowed it to use the name of MERS III as beneficiary of Plaintiff's Deed of Trust.  Plaintiff alleges that the "holders of the CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6" is not an existing entity under the laws of the State of Nevada and cannot obtain or convey an interest in Nevada lands, sue or be sued, or enter into contracts.  The false Corporate Assignment of Deed of Trust was executed by Koch and notarized by Kimberly Clark, almost a month AFTER employees of subsidiaries of FNF Jesse Bewley and Joseph Noel created and executed the Notice of Default (Exhibit 14)  purportedly on behalf of QLSC and caused it to be recorded on July 1, 2008 and three (3) weeks AFTER employees of FNF Allen and Moua created and executed the Substitution of Trustee (Exhibit 15) in favor of an entity which is alleged to be nonexistent, signed by Allen on July 1, 2008 and notarized by Moua on July 7, 2008.

34.  Plaintiff could not have discovered the frauds complained of against FNF, BKF and

1   through its "clerical" employees until no earlier than November, 2011 when the Nevada Attorney

2   General's Office announced its charges against Defendant Joseph Noel, which Plaintiff

3   discovered in the exercise of diligence on December 5, 2011 (Exhibit 10, attached to the

4   Amended Complaint.)

5       35.  Again, having failed to maintain a registered agents for service of process in the State

6   of Nevada, FNF and BKF are precluded from defending against Plaintiff's action on statute of

7   limitations grounds.

8       36.  The discovery of the frauds which the "clerical" employees were instructed to commit

9   in December, 2011, which resulted in the filing of the Amended Complaint within three (3) years,

10  which is timely pursuant to NRS 11.190(3)(d).

11      37.  In their misguided Motion to Dismiss, FNF and BKF assert that Allen and Moua were

12  acting, not as authorized officers of any entity, but were acting in a CLERICAL capacity for their

13  employer, which is alleged to be some subsidiary of FNF and believed to be Lender Processing

14  Services, Inc., now known as BKF.  This Court should accept Movants' argument that the

15  employees of subsidiaries of FNF, alleged to be BKF, to be a judicial admission that employees

16  executing documents on behalf of FNF subsidiaries were acting in a CLERICAL capacity, which

17  is what hundreds of homeowners and dozens of their most vigorous defenders have long

18  suspected: the employees of FNF subsidiaries who execute documents which are recorded and

19  relied upon by this nation's courts as evidence of official acts are not official acts authorized by

20  existing corporate entities but are exactly what has been alleged in the Second Amended

21  Complaint–false documents executed by wholly uninformed clerks claiming to act in an official

22  capacity, which was simply never granted by the lawful authority of the real parties in interest,

23  whose identities are concealed by what has been identified as the MERS®-LPS Racketeering

24  Enterprise.  By their very Motion to Dismiss (prematurely filed to assert the affirmative defense

25  that Plaintiff's claims are barred by various statutes of limitation), Movants have now–after years

26  of deception and at least **1 Million** false documents having been created, executed, and recorded

27

28                                      16

in public land records (Cf. Plaintiff's Second Amended Complaint,  Exhibits 14 and 15), affecting

hundreds of thousands of land titles and effectuating the foreclosure of hundreds of thousands of

homes–admitted that the official acts purportedly taken relative to real estate assets were a mere

clerical function performed by the employees without a consciousness of what they were signing

or for whom.  They are essentially human interface devices with hands capable of holding a pen.

This new admission, forced by years of research and investigation by government regulators,[4]  law

professors,[5] whistleblowers,[6] Attorneys General of various states,[7] homeowners' attorneys[8] and

---

[4]  Federal Reserve Board of Governors (FRB), Federal Deposit Insurance Corporation (FDIC), Office of Comptroller of Currency (OCC), Office Thrift Supervision (OTS), and the Federal Housing Finance Authority (FHFA) entered into a Consent Order with Lender Processing Services, Inc. (LPS) and DOCX (along with a mistakenly identified entity) on April 13, 2011 (SAC Exhibit 23); the United States Department of Justice, by the United States Attorney for the Middle District of Florida, brought criminal charges against DOCX former CEO Lorraine Brown,  culminating in her admission at her November 20, 2012 conviction (SAC Exhibit 30) that more than 1 Million  and the Attorneys General of 45 states and the District of Columbia in the Connecticut Consent Judgment of January 31, 2013 (SAC Exhibit 24.)

[5] Professor Adam Levitin of Georgetown University Law School, Professor Christopher Peterson of the University of Utah (now with the Consumer Financial Protection Bureau), among others

[6]  Florida Attorney and fraud investigator Lynn Syzmoniak (who is the whistleblower credited with her contribution to the National Mortgage Settlement and who exposed the DOCX (LPS) operation on the national news program "60 Minutes" on April 3, 2011, based on information she was developed and was provided by other researchers.

[7]  SAC Exhibits 24 and 30; the Attorneys General of New York and Delaware commenced consumer protection actions against the MERS® System and the FRB, FDIC, OCC, OTS and FHFA obtained Consent Orders against MERSCORP, Inc., MERS III, LPS, DOCX and another LPS affiliate, albeit in an apparently mistaken identity;  several Registers of Deeds have brought actions against MERSCORP and MERS III (Guilford County, North Carolina; Nuences County, Texas; Hennepin County and Ramsey County, Minnesota, various Iowa County Recorders; Montgomery County, Pennsylvania, in which Nuences County, Texas survived a motion to dismiss and Montgomery County, Pennsylvania obtained partial summary judgment, while the summary judgment motion of MERSCORP and MERS III was denied in its entirety.

[8]  A number of homeowners attorneys have been working on the MERS® System aspect of the Enterprise, including but certainly not limited to April Charney, formerly of Jacksonville, Florida Legal Aid, Rhode Island Attorney George Babcock, Washington lawyers (including,  but not limited to, Scott Stafne, Jason Trumbell, Richard Jones, Ha Dao, and Melissa Hueselman), Hawaii Attorney Gary Dubin, numerous New York attorneys (including, but not limited to Susan Chana Lask and Linda Tirelli), numerous Florida attorneys, attorneys from Alabama, Arkansas, California and Arizona,  Nevada Attorneys Treva Hearne and Robert Hager and even Wendy Alison Nora, who is Plaintiff's current

pro se homeowners themselves, along with well-considered court decisions,[9] into the MERS®

System and the corollary activities consisting of false document creation by the FNF subsidiaries,

is new evidence, which might even allow Plaintiff to count his discovery of the frauds[10] for statute

of limitation purposes to the date of the Movants' current filing (if it were necessary and it is not

because his action was timely commenced), on the basis the admission that the LPS document

signers were acting in **clerical capacities** is ultimate evidence of the fraudulent operation of the

MERS®-LPS Racketeering Enterprise (Enterprise) have not been discovered earlier,[11] because the

LPS document signers have pretending to be acting in **authorized and official capacities**.

Access to the LPS Desktop® software and similar software programs is exclusive to the alleged

co-conspirators the Enterprise, and no one outside the operation had access to the programs nor

could they have known, prior to the Consent Order of April 13, 2011, that LPS® Desktop

software was being used in the scheme.  Plaintiff, of course, did not know that LPS had anything

to do with the creation of the documents upon which he and his former counsel relied until

December 5, 2011.   Without formal discovery, it would have been impossible to establish that the

employees of the FNF subsidiaries, who were believed to be employees of LPS or affiliated

entities and are now admitted to be LPS employees in Doc. 219.

---

counsel's research assistant, whose article "Beyond Robo-Signing: Mortgage Foreclosure Defense Basics" was published in the *Wisconsin Lawyer*, the Wisconsin State Bar's Law Journal and was re-published by Westlaw at 84:4 Wis. Law. 16.

[9] Numerous cases, including Judge Robert C. Jones' decision in *Weingartner v. Chase Home Finance*, 702 F.Supp.2d 1276 (2010).

[10]   See discussion of the federal civil RICO statute of limitations as developed by the United States Supreme Court in *Agency Holding Corp. v. Malley-Duff & Associates* 483 U.S. 143 (1987)*, Klehr ex Ux v. A.O. Smith Corp.* 521 U.S. 179 (1997) and *Rotella v. Wood* (98-896) 528 U.S. 549 (2000) in the Memorandum of Points and Authorities, which follows.

[11] Plaintiff is not making a pattern and practice argument concerning the federal civil RICO statute of limitations, which was rejected in *Rotella v. Wood*, supra.  He is arguing the discovery of the Enterprise by the government regulators' Consent Orders of April 13, 2011 as to Lender Processing Services and MERSCORP/MERS III as extending the Nevada statutes of limitations as to the pendent state claim in Count 5, which is the only statute of limitations which he believes must be extended pursuant to NRS 11.190(3)(d).

*Concealment of Rights of Action*

38.   When fraud conceals the discovery of causes of action, the Nevada statutes of limitations for state law claims in Nevada are extended by three (3) years from the date of discovery, and effects Plaintiff's causes as set forth below:

a.  Negligent misrepresentation as to Movants Allen and Moua (Count 5) and

b.  Recission (Count 6) as to a yet unidentified entity, concealed by the MERS®-LPS Racketeering Enterprise.

39.   Plaintiff endeavored to discover the frauds in the exercise of the requisite diligence starting with the first available evidence of the scheme in November, 2011, when the Nevada Attorney General's Office released the information from which Plaintiff recognized the name of Joseph Noel as having appeared on his Notice of Default.  (See Exhibit 10 attached to the Amended Complaint in these proceedings, which Plaintiff preserved as evidence of the date of discovery.)

40.   The role of MERSCORP Holdings, Inc. (MERSCORP), the MERS® computer data base and the use of the name of MERSCORP's shell subsidiary, Mortgage Electronic Registration Systems, Inc. (MERS III), as part of the MERS®-LPS Racketeering Enterprise will not be addressed herein, except as to the utility of the "MERS® System" in the fraudulent concealment of the transactions which give rise to the causes of action pleaded by Plaintiff.

41.   The operation of the MERS®-LPS Racketeering Enterprise effectively concealed the causes of action which Plaintiff had pleaded until at least the admission of Lorraine Brown, former CEO of DOCX, on November 20, 2012, in which it was admitted for the first time that the more than **1 Million** false documents had been executed without lawful authority, of which two (2) documents essential for the nonjudicial foreclosure proceedings were falsely created and recorded in order to pretend to provide the statutorily required Notice of Default and appointment of a lawful Trustee to proceed on behalf of an existing beneficiary to no earlier date than Lorraine Brown's admission at the time of her conviction in the United States District Court for the Middle

1  District of Florida on November 20, 2012.

2       42.  As to all statutes of limitation for state causes of action pleaded against individuals (or

3  corporations maintaining registered agents in the State of Nevada (which do not include Movants

4  FNF and BKF), for which the discovery of causes of action may be extended by delayed discovery

5  or  fraudulent concealment, Plaintiff's state law claims, excluding state RICO (which is 5 years)

6  and quiet title (which is 5 years from the latest date of seisen, pleaded as March 18, 2010, when

7  Plaintiff's occupancy was terminated by the "trash out" performed by Safeguard Properties, LLC)

8  are all properly pleaded within two (2) years after discovery.

9       43.  The relation-back principal embodied at Fed. R. Civ. P. 15( c) could provide for the

10  claims against all Movants to could relate back to the date of commencement of this action, as

11  acknowledged by counsel for the Movants, who seem to concede that the date of the initiating

12  Complaint in this action is the date for application of the relation-back principal.  More generous

13  to the Movants, however, and actually correct, is Plaintiff's interpretation of the relation-back

14  principal, which requires that notice of the claims be given to the parties who are alleged to be

15  liable for damages under the theories of recovery pleaded therein or a related theory of recovery

16  arising from the same factual basis, which Plaintiff informs the Court would be the dates of

17  service of the Amended Complaint upon each Movant.   FNF and BKF were served with the

18  Summons and Amended Complaint on July 1, 2014; Eve Beutler was served on July 14, 2014 and

19  substitute service on Earl Beutler was made upon Eve Beutler, followed by service of copies of

20  the Summons and Complaint by mail; Christina Allen, now Christina Schwarting, was served on

21  July 15, 2014 and Shoua Moua was served on July 15, 2014.  All of the Movants were served with

22  copies of the Amended Complaint within all of applicable state statutes of limitation from the

23  earliest date of beginning of the discovery of the scheme, December 5, 2011.

24       44.  Because the function of FNF's subsidiary, BKF, and its affiliated subsidiaries, and the

25

26

27

28                                                        20

now-admitted deployment of **clerical employees**[12] to create and execute false documents in **pretended official capacities** and to record the same, in thousands of cases as exemplified by this case in which false documents created, executed and recorded by persons holding clerical positions and pretending to act in official capacities, creating the false appearance of a nonjudicial foreclosures in the name of a nonexistent entity by QLSC.  QLSC was never lawfully substituted as Trustee for the nonexistent entity which was purportedly and unlawfully assigned the beneficial interest in Plaintiff's Deed of Trust, "U.S. Bank, N.A.,  as Trustee for the holders of the CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6," by the false Corporate Assignment of Deed of Trust signed by Allen and notarized by Moua.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny the improperly filed Motion to Dismiss on the premature *pleading* of an affirmative defense under Fed. R. Civ. P. 8 without filing an answer and for the further reasons that FNF and BKF are not entitled to the benefit of any Nevada statute of limitation, the federal, civil RICO case was timely filed, as was the Nevada RICO claim; that fraudulent concealment tolls any other Counts pleaded against Allen and Moua and none of the Movants have standing to claim the protection of NRS 107.080 and because NRS 107.080  it was not followed in any respect whatsoever.

DATED this 6th day of March, 2015.


*/s/ Mitchell Posin*
_____
Mitchell Posin, Esq., attorney for Plaintiff
LAW OFFICES OF MITCHELL POSIN, CHTD.
1645 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel. (702) 382-2222/Fax (702) 382-7496
mposin@gmail.com

---

[12] As of Movants' filing of their initial Motions to Dismiss on February 13, 2015, specifically, at Doc. 219.

1

**DECLARATION UNDER PENALTY OF PERJURY**

2  Wendy Alison Nora declares under penalty of perjury pursuant to 28 U.S.C. sec. 1746

3 that she is the investigator and research assistant for Attorney Posin.  That she researched the

4 record filings with the Nevada Secretary of State prior to the filing of the Amended Complaint in

5 this action on March 17, 2014 and found that neither Fidelity National Financial, Inc. nor Black

6 Knight Financial, LLC, formerly known as Lender Processing Services, Inc. (all Delaware

7 corporations) had registered to due business in the State of Nevada as foreign corporations and

8 had not appointed registered agents for service of process in the State of Nevada.  On March 3,

9 2015, she again investigated their corporate status in the State of Nevada and retrieved Exhibits A,

10 B, and C from the official website of the Nevada Secretary of State, which she converted from

11 html format to pdf format using Adobe Acrobat X and caused the Exhibits to be assembled for

12 purposes of judicial notice by this Court.

13 Dated at Madison, Wisconsin this 4th day of March, 2015.

14        */s/ Wendy Alison Nora*

        ———————————————————

15         Wendy Alison Nora

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM**

2

**INTRODUCTION**

3      The facts are set forth in the Second Amended Complaint, which are to be presumed to be

4 true at this stage of the proceeding, the Exhibits attached to the Second Amended Complaint,

5 many of which are judicially noticeable (including but not limited to the Exhibits referred to

6 herein),  the foregoing Motion and the Exhibits attached hereto, which are judicially noticeable

7 and for which judicial notice is hereby requested.  The applicable statutes of limitation are recited

8 in the foregoing motion and will not be reproduced in this Memorandum, but are incorporated by

9 reference herein.  The application of the statutes of limitation are specifically discussed above and

10 the discussion is re-incorporated in this Memorandum, which will briefly address the applicable

11 law only as to the Counts in which the Movants have a legal interest to assert.  The Court is asked

12 to rely on the identification of the interests of the separate Movants set forth above for this

13 consolidated response.

14

**POINTS AND AUTHORITIES**

15 **I.  Count One: Nevada Civil RICO**

16      The Nevada Supreme Court decided, in *Sirogusa v. Brown*, 114 Nev. 1384, 971 P.2d 801

17 (1998):

18      "We have said that 'Nevada's anti-racketeering statutes are patterned after the federal

19 [RICO] statutes.' *Hale v. Burkhardt*, 104 Nev. 632, 634, 764 P.2d 866, 867 (1988). However, we

20 have also noted 'that Nevada's civil RICO statute differs in some respects from the federal civil

21 RICO statute." *Id.* at 635, 764 P.2d at 868. One critical distinction is found in comparing the

22 language of 18 U.S.C. § 1961(5) with that of NRS 207.390. The federal statute provides that a

23 claimant must plead a pattern of racketeering activity and that such a pattern requires at least two

24 predicate acts; Nevada's RICO statute does not speak in terms of a "pattern of racketeering" and

25 provides that racketeering activity means two predicate acts of the type described in NRS 207.390

26 and NRS 207.360.

27

28

1    "In *Sedima, S.P.R.L. v. Imrex Co.*, the United States Supreme Court noted the critical

2    linguistic distinction between 'requires' and 'means.' 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 87

3    L.Ed.2d 346 (1985). The Court explained: [T]he definition of a 'pattern of racketeering activity'

4    states that a pattern 'requires at least two acts of racketeering activity,' [18 U.S.C.] § 1961(5)

5    (emphasis added), not that it 'means' two such acts. The implication is that while two acts are

6    necessary, they may not be sufficient. Indeed, in common parlance two of anything do not

7    generally form a 'pattern.' Id.

8    "In *Computer Concepts, Inc. v. Brandt*, 310 Or. 706, 801 P.2d 800 (Or.1990), the Oregon

9    Supreme Court distinguished its state RICO statute from the federal RICO statute: Oregon's

10   definitional statute uses the phrase 'pattern of racketeering activity means engaging in at least two

11   incidents of racketeering activity,' and continues with language similar to that contained in NRS

12   207.390. *Brandt*, 801 P.2d at 807 (emphasis added). The *Brandt* court concluded that the word

13   'means' (also used in NRS 207.390) implied that the definition was self-contained and there was

14   no additional pattern/continuity requirement. Id. at 807-08. The Oregon court concluded that a

15   plaintiff need only allege the elements clearly set forth in its statute. We interpret our statute in the

16   same manner. . .

17   "Accordingly, we hold that there is no pattern/continuity requirement as is required under

18   federal law. A state RICO complaint need allege no more than that which is set forth in the

19   Nevada statute. In the instant case, Joanne's complaint sufficiently set forth at least two 'not

20   isolated' predicate acts 'that have the same or similar pattern, intents, results, accomplices,

21   victims or methods of commission.' NRS 207.390."

22   The Court is asked to notice the care with which he pleaded the facts necessary to establish

23   a Nevada civil RICO claim in Count 1.  Plaintiff observes that he carefully pleaded the specific

24   facts Counts 1 and  2, incorporating the allegations of Count 1 into Count 2, by reference, in

25   which partially overpleaded Nevada RICO to specifically allege all facts required to establish a

26   federal, civil RICO cause of action as well .  Nevertheless, *Sirogusa*, supra, is notable because the

27

28                                          24

distinctions between Nevada civil RICO and federal, civil RICO are also addressed therein. Although there can be no reasonable argument that Plaintiff did not establish a Nevada civil RICO claim, the statute of limitations issue was squarely addressed in *Sirogusa*, supra, which holds:

"Once again, we note the general rule that the question of when a claimant discovered or should have discovered the facts constituting a cause of action is one of fact. *Oak Grove Inv. v. Bell & Gossett Co.*, 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983). Only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to the claim should such a determination be made as a matter of law. See *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir.1992).

"In *Massey v. Litton*, 99 Nev. 723, 727, 669 P.2d 248, 251 (1983) we held that the term 'injury' as used in a medical malpractice statute encompassed 'legal injury.'-that is, 'both the fact of damage suffered and the realization that the cause was the health care provider's negligence.' **Likewise, we conclude that the term "injury" as used in NRS 207.520 encompasses discovery of both an injury and the cause of that injury, in this case Brown's alleged racketeering activity**. See *Penuel v. Titan/Value Equities Group, Inc.*, 127 Or.App. 195, 872 P.2d 28, 31 (Or. Ct. App.1994) (holding that a state RICO cause of action accrues under Oregon's five year statute of limitations when the claimants discovered or in the exercise of reasonable diligence should have discovered that they had been damaged and the cause of their damages and concluding that such determinations were factual). We conclude that such factual determinations cannot be made as a matter of law. To the extent that the district court based its decision to dismiss Joanne's Nevada RICO claims on the statute of limitations, it erred." (Bold emphasis added.)

To the extent that Allen and Moua, who are the only parties who could raise a statute of limitations defense to Count 1 (but are required to plead the defense under Fed. R. Civ. P. 8), FNF and BKF being excluded by the plain meaning of NRS 80.90, but if they had complied therewith, the same argument applies: the discovery of the injury occurred on or about March 18, 2010 (but

1  not earlier) and the cause of the injury was discovered on December 5, 2011.  Count 1, including

2  the use of the named employees Allen and Moua by the corporate defendants and McCarthy in the

3  scheme, was timely pleaded.  The Beutlers are not parties to Count 1.

4  **II.  Count Two: Federal, Civil RICO**

5       The Amended Complaint was filed within four (4) years of the date Plaintiff's injury

6  accrued no earlier than March 18, 2010.  *Agency Holding Corp. v. Malley-Duff & Associates,*  483

7  U.S. 143 (1987). FNF and BKF could claim the affirmative defense of under the federal, civil

8  RICO statute of limitation under Fed. R. Civ. P. 8, because the Nevada preclusion under NRS

9  80.90 does not apply to the federal, civil RICO cause of action.  Allen and Moua, in their capacity

10  as employees (mere "clerical" employees by their judicial admission) could raise the statute of

11  limitation affirmative defense as well.  But the filing of the Amended Complaint is clearly timely

12  as within four (4) years of the date the injury to Plaintiff's property accrued.  The Beutlers are not

13  parties to Count 2.

14  *III.  The documents upon which the Movants rely are void.*

15       In *Torrealba v. Kesmetis*, 178 P.3d 716, 124 Nev. Adv. Op. No. 10 (2008) which is a

16  similar case involving the false notarization of documents (which were apparently not themselves

17  false, as the documents in this case have already been shown to be), the Nevada Supreme Court

18  held that documents falsely notarized are void under circumstances less devastating than these,

19  reasoning:

20       "In Williams [*In re Williams*, 584 S.E.2d 922 (W. Va. 2003)], the Supreme Court of

21  Appeals of West Virginia considered a certified question from the United States Bankruptcy Court

22  for the Northern District of West Virginia regarding the priority of parties in a bankruptcy action

23  when the instrument used to secure a priority interest was improperly acknowledged.  At issue

24  was a deed of trust, notarized in West Virginia, granting the mortgage company a security interest

25  in residential property. Because the notary was authorized to acknowledge signatures only in

26  Maryland, however, he subsequently altered the acknowledgment to appear as if the debtors

27

28                                                          26

signed the deed in Maryland. The deed was then recorded in West Virginia. After the debtors filed bankruptcy, the bankruptcy trustee filed an action seeking to have the mortgage company declared an unsecured creditor on the ground that the improperly acknowledged deed of trust failed to secure the company's priority interest. The bankruptcy court certified the following question to the state court: "Does the trustee in bankruptcy, given the status of a bona fide purchaser without notice by federal bankruptcy law, prevail over the holder of a deed of trust recorded but improperly acknowledged?"

"The Williams court concluded that the appropriate test for determining whether an improperly notarized instrument should be declared **void** (emphasis added) is to inquire 'whether an improper benefit was obtained by the notary or any party to the instrument, as well as whether any harm flowed from the transaction.' If either question receives an affirmative response, the acknowledgment is invalid and the recorded instrument therefore does not provide constructive notice. The court explained that it was retreating from its prior application of a strict per se rule for compliance with notary requirements because the newly adopted test focused on shielding the parties from 'potential wrongdoing or fraud where notary misconduct results in an improperly acknowledged' instrument rather than voiding instruments based on imperfect acknowledgments regardless of the nature of the defect.

"We adopt the Williams test because it strikes an appropriate balance between respecting the role of substantive notary requirements in protecting parties to a transaction from wrongdoing or fraud and recognizing that certain technical acknowledgement violations may not warrant voiding an instrument. Therefore, an improperly acknowledged but recorded instrument is invalid and thus does not provide constructive notice for commencing the limitations period if the notary or other party to the instrument would obtain an improper benefit or if harm would flow from the transaction if the court honored the instrument despite the improper acknowledgment."

Plaintiff alleges that he was harmed by the false authentications of Noel and Moua, because he and his former counsel relied on the Notice of Default and Substitution of Trustee

1   and did not seek to stay the foreclosure sale within 90 days as allowed by NRS 107.080(5).  The

2   harm is obvious because it is impossible to ascertain who is giving Notice of Default, so Plaintiff

3   could not locate the real party actually responsible for giving the Notice on July 1, 2008;  QLSC

4   was never lawfully appointed as substituted Trustee by LPS "clerical" employee Allen on July 1,

5   2008, whose signature was notarized by Moua a week later; the later-created (July 28, 2008) false

6   Corporate Assignment of Deed was falsely executed in the name of MERS III, as nominee for

7   NCMC, when NCMC had terminated its contract with MERSCORP more than four (4) months

8   earlier; sale was made to a nonexistent entity, U.S. Bank, N.A. as Trustee for the holders of the

9   CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-6, and then sold for far less than

10   the value of the property to purchasers who knew or should have known of Plaintiff's superior

11   claim.   It must be added that the injustice done originated from the failure to give Notice of

12   Acceleration under paragraph 22 of the Deed of Trust because the named beneficiary was out of

13   business and the real party in interest to whom the alleged debt is owed is still unknown to the

14   Plaintiff.

## CONCLUSION

16       Movants' premature statutes of limitations defenses, raised by precluded parties FNF and

17   BKF, except as to the federal, civil RICO; the premature affirmative defense of statutes of

18   limitations raised by "clerical" employees pretending to act on behalf of nonexistent entities; and

19   prematurely raised by the Beutlers who have no interest in the title to the subject property and who

20   are only parties to Count 7, if they can be shown to have profited from the use of the subject

21   property after it was fraudulently taken from Plaintiff must all be rejected on their merits.  The

22   Amended Complaint was timely filed as to all Movants.  The Movants must now be precluded

23   from joining in further motions to dismiss under Fed. R. Civ. P. 12(g) and must now be required

24   to answer Plaintiff's Third Amended Complaint, which will simply correct paragraph 212 as

25   indicated and will correct a typographical error in the request for relief, which refers to a Count 9,

26   when it was intended to read: Count 8.

27

28

1    DATED this 6th  day of March, 2015.

2                                    */s/ Mitchell Posin*

3                        _____
                         Mitchell Posin, Esq., attorney for Plaintiff
4                        LAW OFFICES OF MITCHELL POSIN, CHTD.
                         1645 Village Center Circle, Suite 200
5                        Las Vegas, Nevada 89101
                         Tel. (702) 382-2222/Fax (702) 382-7496
6                        mposin@gmail.com

7                        **CERTIFICATE OF SERVICE**

8            I HEREBY CERTIFY that I authorized the foregoing document and the attachments
     hereto to be electronically filed on the 6th  day of March, 2015 by CM/ECF with the Court and
9    thereby caused them to be served on all parties and counsel as identified on the Court-generated
     Notice of Electronic Filing.

10                                   */s/ Mitchell Posin*

11                       _____
                                    Mitchell Posin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      29